IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARILYN C. RAINWATER,                                                 CV. 04-6327 KI

                 Plaintiff,                                            OPINION AND ORDER

       v.

JOANNE B. BARNHART
Commissioner of Social Security,

               Defendant.

KING, Judge:

**INTRODUCTION**

Plaintiff Marilyn Rainwater brings this action pursuant to the Social Security Act, 42 USC § 405(g)("the Act"), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits and disability insurance benefits under Title II of the Act. For the reasons set forth below, I affirm the decision of the Commissioner.

/ / /

## PROCEDURAL BACKGROUND

Rainwater protectively filed an application for benefits on February 2, 2001, alleging disability since November 21, 1997, due to compressed vertebrae of the lumbar and cervical spines, Graves disease, and osteoarthritis. Her application was denied initially and upon reconsideration. On September 18, 2003, a hearing was held before an Administrative Law Judge (ALJ). The hearing was continued in order to obtain a neurological evaluation, and a second hearing was held on February 19, 2004. In a decision dated April 2, 2004, the ALJ found Rainwater was not entitled to benefits. On July 12, 2004, the Appeals Council denied Rainwater's request for review, making the ALJ's decision the final decision of the Commissioner. Rainwater now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## ALJ's DECISION

At step one, the ALJ found Rainwater had not engaged in substantial gainful activity since the alleged onset of her disability on November 21, 1997.

At step two, the ALJ found Rainwater had the medically determinable severe impairments of degenerative disc disease of the cervical and lumbar spines, status post cervical surgeries.

At step three, the ALJ found that Rainwater's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Rainwater was not fully credible and retained the residual functional capacity to perform a limited range of light exertion work, with the ability frequently to lift ten pounds, to sit about six hours of an eight hour day, with a sit/stand option to periodically alternate positions, but with limited ability to push or pull above the shoulder with her right arm, and limited to only occasionally climbing ladders, scaffolds, or ropes and occasionally reaching overhead. The ALJ found that she retained the residual functional capacity to perform her past work as a customer service clerk, and that she is therefore not disabled within the meaning of the Act.

## **DISCUSSION**

Rainwater was 59 years old at the time of the ALJ's decision, with an Associate of Science degree in accounting. The medical records accurately set forth Rainwater's medical history as it relates to her claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details will not be recounted here.

Rainwater contends that the ALJ erred by: (l) finding her not credible; and (2) rejecting the opinion of her treating physician.

/ / /

/ / /

I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...."
> *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988));
> *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective

medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen*, 80 F.3d at 1282 (italics in original).

There is objective medical evidence that Rainwater suffers from cervical disc syndrome with failed surgery, chronic compression deformity in her lumbar spine, and impingement syndrome of the shoulder. These impairments could reasonably be expected to cause some degree of pain. Therefore, the ALJ may not simply reject Rainwater's symptom testimony. *Id* To determine whether Rainwater's testimony is credible the ALJ may consider, for example: (l) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen,* 80 F3d at 1284.

The ALJ stated:

> Similarly, Dr. Bufton offered no functional assessment, but found only some decreased range of motion on examination; interestingly, she also noted "significant pain expression," namely "she was constantly moving while sitting and constantly rubbing her back and frequently signing [sic] or making other sounds of distress" [citation omitted.] This is consistent with Dr. Andresen's statements that during the physical examination, "she is smiling and able to participate quite well with significant pain behaviors with portions of the physical examination...patient was able to perform heel to toe walking with significant gyration movement with upper body and arms. She would dramatically utilize the wall or office equipment to apparently maintain her balance" [citation omitted.] The claimant's "pain behaviors" and "dramatic" presentation when being examined specifically for disability purposes are disproportionate to the objective findings, not otherwise present in the records, and are clearly suggestive of exaggeration, as is the claimant's testimony that she spends 4 hours daily in a recliner due to pain. While she may well do so, a medical need to do so is not supported by the full record. It is additionally noted that at 5'4" tall, during the period of adjudication, Ms. Rainwater's weight has generally been in the 170-205 pounds range, a factor which

likely contributes to the claimant's inactivity. Tr. 22-23.

L. Bufton, M.D., Ph.D., examined Rainwater on August 7, 2001. Dr. Bufton noted that Rainwater had sustained an L1 compression fracture and a left humerus fracture when she was hit by an automobile in November 1997. Rainwater's medical history included three cervical neck surgeries and surgical repair of the left humerus. She complained of chronic low back pain since the accident, radiating into her hips. Rainwater told Dr. Bufton that her pain is worse in the morning, and when she first gets up to walk her legs feel weak. This improves after a few minutes. She reported that she tired easily, and had "some neck spasming [sic] and tightness but not significant pain." Tr. 357. Rainwater complained of frequent headaches and numbness in her hands with certain reaching motions. She could not heel walk. She could toe walk a little. Dr. Bufton stated:

> Ms. Rainwater was a pleasant, overweight, middle-aged woman. Ht: 63 3/4"
> Wt: 207 lb. She looked quite uncomfortable throughout the interview and
> exam. She was constantly moving while sitting and constantly rubbing her
> back and frequently sighing or making other sounds of distress. I told her
> to do only what she was comfortable doing during the examination and
> she didn't appear to be more uncomfortable with any of my maneuvers.
> Tr. 358.

Dr.Bufton concluded:

> IMPRESSION: The claimant presents with chronic back pain status post
> accident 4 years ago. She has significant pain expression. She has de-
> creased range of motion. *Id*

Dr. Bufton does not suggest that Rainwater was malingering. His report does not constitute evidence that Rainwater is not credible.

Bryan L. Andresen, M.D., performed a disability determination evaluation of Rainwater on October 23, 2003. He wrote:

> Patient is pleasant and cooperative with the exam. She is smiling and able to participate quite well with significant pain behaviors with portions of the physical exam. Patient was instructed not to move into position that caused significant pain. Patient utilized cane held in her right hand. She is able to ambulate with moderate antalgic gait [a limping walk used to avoid pain], short stance phase on the right. Patient was able to perform heel to toe walking with significant gyration movement with upper body and arms. She would dramatically utilize the wall or office equipment to apparently maintain her balance.
>
> . . .
>
> Patient has reports of increasing pain, however, based upon orthopedic and neurologic exam and review of diagnostic and clinical records, I did not find any specific objective worsening of this woman's condition. Regards to cervical spine surgeries, I find no convincing evidence of recurrent radiculopathy. I feel the patient's right neck and shoulder complaints are primarily musculoligamentous. The left humerus fracture has healed well and provides good functioning of the left upper extremity. Patient does have some restrictions, overhead lifting particularly on the right, again feel based most likely on soft tissue injury.
>
> Patient reports worsening pain of her low back. Particularly given an MRI scan obtained in 2001 of the lumbar spine as showing no canal stenosis or neuroforaminal narrowing and based upon physical exam of no clinical radiculopathy or neurologic compromise. I feel the patient's pain reports are due in part to sacral coccygeal "fracture" as well as L1 compression fracture but I suspect this reflects limitations in motion of the lumbosacral spine rather than persistent fracture, per se. I would recommend a follow up limited bone scan to assess the sacroiliac area for objective evidence ongoing inflammation suggesting incomplete healing. Patient's use of cane has been an attempt primarily to assist with pain reduction which has really not been affective [sic].
>
> Pending possible evaluation with bone scan, I feel based upon history and physical and review of medical records the patient could tolerate a sedentary position, but with provisions for alternating sitting, standing and avoidance of reaching above shoulder height particularly on the right side. Tr. 454-55.

Dr. Andresen does not suggest that Rainwater is malingering. To the contrary, he suggests further evaluation in order to assess the cause of her low back pain.

The ALJ rejected Rainwater's testimony that she spent four hours a day in her recliner due to pain, noting that the fact that she did so did not establish that there was a medical reason for the behavior. Rainwater argues that her need to rest in a recliner was consistent with her reports to her doctors, but there is no indication in the record that she ever reported a need to rest in a recliner for four hours a day to any of her treating physicians. Tr. 286-99; 362-81; 438-43; 349-56.

Rainwater argues that the ALJ erroneously found her obesity to be a basis for rejecting her testimony. The ALJ noted that Rainwater's weight was a "factor which likely contributes to the claimant's inactivity." Tr. 23.

The ALJ noted that Rainwater asserts disability because of a combination of neck and back pain, but the record contains a lumbar MRI and studies that are essentially benign. Tr. 385; 454-55. There is no objective evidence of radiculopathy or neurologic compromise. *Id* The cited physician reports do not suggest malingering, though Dr. Andreson's language arguably supports the ALJ's conclusion that Rainwater exaggerated her symptoms. Given the ambiguous physical evidence and Rainwater's conflicting reports to the ALJ and her physicians, the ALJ's determination that Rainwater is not fully credible is supported by clear and convincing evidence.

II. Treating Physician

George M. Larson, D.O., was Rainwater's treating physician between April 1997 and at least September 2003. In December 2001 he wrote that "[b]ased on her medical problems she is unable to engage in gainful employment on a fulltime [sic] basis. She would be unable to sustain an 8-hour workday, even with normal breaks and lunch periods for five days per week. She

would require environmental accommodation to be able to work even part time with light duty only restrictions.  Tr. 448.

In September 2003 Dr. Larson wrote:

> Ms. Rainwater suffers from Cervical Disc Syndrome with failed surgery. In addition she has a chronic compression deformity in her lumbar spine.  While these conditions may not constitute an acute injury, the chronic nature of her conditions make it impossible for Ms. Rainwater to engage in fulltime [sic] gainful employment.  She would be unable to sustain a 8-hour workday even taking into account the normal rest and lunch breaks most jobs offer.  She would require environmental accommodation even for part time employment as will [sic] as light duty restrictions.  Tr. 447.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2).  In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Id.;* § 404.1527(d)(5).  An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998).  If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527. *Id.* citing SSR 96-2p.  An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

///

The ALJ rejected Dr. Larson's opinion, stating:

> Dr. Larson's own chart notes indicate that when the claimant asked Dr. Larson for a letter endorsing disability, she was told to "ask her attorney to draft a letter that will satisfy Disability Determination Services and Dr. Larson will consider endorsing or amending it" [citation omitted]. This statement is indicative of functioning as a patient advocate, as vs. an objective evaluator. Then, the letter was clearly drafted with wording which would mandate a finding of disability, but Dr. Larson failed to articulate any specific work restrictions, or to provide any rationale for his conclusion, thus significantly limiting its probative value. This opinion is inconsistent with the medical evidence as a whole, and with all of the other medical opinions of record, as discussed above, as well as with Dr. Larson's own chart notes. For the most part, Dr. Larson's chart notes are very nominal, and often state only "lumbar strain" or "cervical strain" to denote office visits without any further description or examination findings. Accordingly, they do not support the level of pain or functional restriction which would be consistent with his later conclusionary opinion of disability. Finally, it should be noted that Dr. Larson is a family practitioner. The claimant has been treated and examined by numerous specialists (Hacker; Bernstein; Bufton, neurosurgeon/neurologist; Macha, orthopedic surgeon; and Andersen, Rehabilitation Medicine Specialist). All of this medical evidence has been considered. As discussed, none of these specialists find the claimant as limited as she asserts. These opinions are found to be more reliable than the claimant's opinion, which she conveyed to Dr. Larson and he merely endorsed without medical support. Tr. 23-24.

That Dr. Larson's letter was drafted at the request of counsel is not a legitimate basis for evaluating the reliability of the report. *Reddick,* 157 F3d at 726. Dr. Larson's conclusion, that Rainwater is not capable of sustaining work for an eight hour day, is contradicted by Dr. Andresen's conclusion that she could maintain employment, with certain restrictions. Accordingly, the question is whether the ALJ gave specific and legitimate reasons for rejecting Dr. Larson's opinion. *Lester,* 81 F3d 829-33.

The ALJ properly noted that Dr. Larson's chart notes are minimal, with few records of examination findings or description. Tr. 362-81; 438-43. None of the treating, examining, or reviewing specialists found Rainwater as limited as did Larson. The ALJ identified specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Larson's conclusion that Rainwater was not capable of sustaining an eight-hour work day.

## **CONCLUSION**

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this   21st   day of September, 2005.

  /s /Garr M. King
GARR M. KING
United States District Judge